UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VIRGINIA HOPKINS, on behalf of George Garcia, deceased,<br>    Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,<br>Acting Commissioner of Social Security,<br>    Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. 3:16-CV-2869-BK<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

The Court now considers the merits of the parties' cross-motions for summary judgment. Doc. 15; Doc. 19. For the reasons detailed below, Plaintiff's *Motion for Summary Judgment* is **GRANTED**, Defendant's *Motion for Summary Judgment* is **DENIED**, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings.

**I. BACKGROUND**

    **A. Procedural History**

Plaintiff, on behalf of her deceased brother, seeks judicial review of a final decision by the Commissioner denying the decedent's claim for disability insurance benefits under the Social Security Act ("the Act"). The decedent, George Garcia ("Garcia"), originally filed for benefits in November 2011, claiming that he became disabled in April 2011. Doc. 8-6 at 4. Garcia's application (the "First Application") was denied at all administrative levels, and he appealed to this Court pursuant to 42 U.S.C. § 405(g). Doc. 8-5 at 6, 12; Doc. 8-3 at 2-7; Doc. 8-3 at 18-30.

While his appeal was pending in this Court, Garcia filed another application for disability benefits in July 2013 (the "Second Application"). Doc. 8-26 at 17. The Second Application was denied at the initial and reconsideration levels, Doc. 8-24 at 90 & Doc. 8-25 at 2-3, and a

different administrative law judge ("ALJ") convened a hearing with respect to the Second Application in March 2014. Doc. 8-22 at 42-61. Shortly after that hearing, this Court remanded the case concerning the First Application for further review, after which, the ALJ consolidated the First and Second Applications. Doc. 8-22 at 64-66; Doc. 8-23 at 22-31. Following an administrative hearing, after which Garcia passed away, the ALJ determined that Garcia was not disabled within the meaning of the Act. Doc. 8-22 at 15, 35. This appeal followed.

### B. Factual Background

Garcia was born in April 1960 and was 51 years old at the alleged onset of his disability. Doc. 8-6 at 4. He had a high school education, went to college for a year, and his past relevant work included employment as a cashier/checker and counter clerk. Doc. 8-22 at 71, 84. In terms of his medical history, Garcia went to the hospital in Fall 2011 to establish care for a history of HIV. Doc. 8-10 at 22. In addition to HIV, he was diagnosed with hepatitis C, diarrhea, proteinuria, syphilis, hypertension, gout, heel pain, and epistaxis (nosebleeds). Doc. 8-10 at 11-12; Doc. 8-10 at 26-27; Doc. 8-18 at 71, 75; Doc. 9-6 at 31, 34; Doc. 9-6 at 81, 83; Doc. 9-23 at 18-19. During some medical visits, Garcia exhibited depression and "seem[ed] not to care about anything," but he was not receiving mental health treatment. Doc. 8-19 at 18; Doc. 8-19 at 81; *see also* Doc. 8-16 at 39; Doc. 9-6 at 40; Doc. 9-6 at 80; Doc. 9-10 at 4; Doc. 9-11 at 31.

In December 2013, Dr. George Mount, Ph.D. performed a consultative examination of Garcia.[1] Doc. 9-2 at 2. Testing indicated that Garcia had "a tendency to magnify illness" and

---

[1] The ALJ incorrectly states that Dr. Mount evaluated Garcia in 2015. Doc. 8-22 at 22. Due to this error, the Court cannot determine whether substantial evidence supports the ALJ's March 2016 determination that the record did not support that Garcia had marked limitations for the

endorse feelings of extreme vulnerability, suggesting the presence of a severe mental disorder. Doc. 9-2 at 4. Dr. Mount indicated that Garcia appeared to suffer from (1) dependent personality disorder with depressive personality traits, schizoid personality features, and avoidant personality features; (2) major depression, recurrent, severe, without psychotic features; (3) adjustment disorder with anxiety; and (4) posttraumatic stress disorder. Doc. 9-2 at 4, 9.

A different test administered by Dr. Mount indicated that Garcia was "experiencing substantially more depressive symptoms than the typical medical patient," and it was noted that the "ordinary responsibilities and give-and-take of everyday life may be more than [Garcia] can bear." Doc. 9-2 at 14. Dr. Mount concluded that Garcia could not likely tolerate having his work judged and evaluated by a supervisor. Doc. 9-2 at 19. Dr. Mount also predicted that Garcia could not sustain a normal workday or workweek without significant interruptions from psychologically based symptoms. Doc. 9-2 at 19. Additionally, Dr. Mount reported that Garcia was markedly limited in (1) maintaining attention and concentration for extended periods; (2) performing activities within a regular schedule, maintaining regular attendance, and being punctual; (3) interacting with coworkers without exhibiting behavioral extremes; (4) accepting instructions and responding appropriately to criticism from supervisors; and (5) sustaining an ordinary routine without special supervision. Doc. 9-2 at 20-21.

### C. The ALJ's Findings

In March 2016, the ALJ determined that Garcia, had had the severe impairments of HIV, chronic kidney disease, anemia, tinnitus, hypertension, depressive disorder, adjustment disorder, posttraumatic stress disorder, dependent personality disorder, and hepatitis. Doc. 8-22 at 17-18.

---

necessary 12-month period. Because the durational requirement must be satisfied before benefits may be awarded, the ALJ should revisit this requirement on remand.

The ALJ noted that while Garcia had reported feeling depressed, there was no evidence in the record suggesting that he had pursued medical treatment, and the record did not support the marked limitations that Dr. Mount found or reveal that Garcia's depression or anxiety had imposed work-related limitations for 12 consecutive months. Doc. 8-22 at 22.

In reaching that conclusion, the ALJ noted that Garcia took care of his pets, picked up his clothes, made his bed, cleaned the kitchen, washed dishes, and did not need a reminder for medications or grooming. Doc. 8-22 at 24. The ALJ acknowledged that Garcia's ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was at issue, but noted that "no clinician has directly addressed the frequency or duration" of any such interruptions.[2] Doc. 8-22 at 26; *see also* Doc. 8-22 at 26 (ALJ noting that "a work evaluation is the vehicle by which the claimant's adverse responses to demands of work and any GAF predictions are put to the test. But . . . no work evaluation has been performed. Thus, the potential triggers for decompensation in the workplace remain unclear."); Doc. 8-22 at 35 (ALJ stating that "[Garcia] was not screened-in for a full vocational assessment and thus the capacity to actually perform the jobs proposed by the DDS was never tested."). The ALJ concluded that "[i]n the absence of a work evaluation providing this information," he would limit Garcia to two-hour work intervals for jobs that did not involve fast paced, assembly line work. Doc. 8-22 at 26.

---

[2] A "Report of Contact" dated March 11, 2016 states that consultative exams were requested in August and October 2015, but the state disability determination service ("DDS") erroneously found that the required documentation was not on file and closed the case requests. Doc. 8-27 at 14.

4

The ALJ found that Garcia was capable of performing a range of light work, with the additional psychological limitations that he could not perform fast-paced, assembly line work and was limited to working for two-hour intervals followed by breaks. Doc. 8-22 at 24-25. The ALJ concluded that Garcia could have performed his past relevant work as a cashier and had thus not been disabled within the meaning of the Act. Doc. 8-22 at 35.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

6

**III. ARGUMENT AND ANALYSIS**

Although Plaintiff raises several issues on appeal, the Court need only address one since it necessitates a reversal and remand for further proceedings.[3] Specifically, Plaintiff argues that the ALJ's mental RFC finding is not supported by substantial evidence because no acceptable medical source opined about the effect that Garcia's psychological limitations would have on his ability to work. Doc. 16 at 31-34 (citing *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995)). Defendant responds that it is the ALJ's responsibility to assess a claimant's RFC, and the ALJ considered the entire record and fully accommodated Garcia's mental impairments. Doc. 19-1 at 11-13.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on

---

[3] Although the Court does not undertake to examine Plaintiff's other arguments, she may raise those issues on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim). Moreover, as previously noted, the ALJ should revisit whether Plaintiff satisfies the durational requirement on remand.

his ability to work. *Id*. at 557-58. The court rejected the Commissioner's attempt to argue that the medical evidence substantially supported the ALJ's conclusion, observing that the court was unable to determine the effects of the claimant's conditions, "no matter how 'small'," on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

Here, the ALJ found Garcia capable of performing a range of light work, with the psychological limitations that he could not perform fast-paced, assembly line work and was limited to working for two-hour intervals followed by breaks. Doc. 8-22 at 24-25. In determining this RFC, the ALJ purported to give partial weight to the psychological findings made by Dr. Evan Knapp, a consulting psychologist, who reported that Garcia had depressive disorder, a GAF of 45-55, average intelligence, and intact judgment and insight. Doc. 8-22 at 21, 33. The ALJ rejected the marked limitations that Dr. Mount found, because Garcia took care of his pets, picked up his clothes, made his bed, cleaned the kitchen, washed dishes, did not need a reminder for medications or grooming, "checked in" with his sister, and got along with others. Doc. 8-22 at 24.

However, a review of the record reveals that the only possibly relevant, psychologically based limitation noted by Dr. Knapp is that Garcia "may have some difficulty completing more complex tasks in a timely manner due to problems with concentration. Simple tasks appear to be within his ability." Doc. 9-8 at 41. This assessment, however, does not speak to Garcia's ability to perform substantial gainful activity for a 40-hour work week, whereas Dr. Mount's assessment does. *See Fitzpatrick v. Colvin*, No. 15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (Fitzwater, J.) (finding that the ALJ's mental RFC assessment was not supported by substantial evidence where he rejected the only medical opinions addressing the claimant's

8

ability to work, and the other evidence of record did not support a conclusion that the plaintiff could work despite his impairments).

While the RFC determination falls solely to the ALJ, judges of this Court have consistently found that an ALJ contravenes *Ripley* under the circumstances presented here. *See Raper v. Colvin*, 262 F.Supp.3d 415, 422 (N.D. Tex. 2017) (Godbey, J.) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of the claimant's impairments on the claimant's ability to work); *see also Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) ("*Ripley* clarifies that an [ALJ] cannot determine from raw medical data the effects of impairments on claimants' ability to work.").

Just as in *Fitzpatrick*, this Court "is not able to agree that the evidence substantially supports the ALJ's conclusion that [Garcia] was not disabled, because there is no medical opinion supporting the ALJ's finding that [Garcia] has the RFC" to perform light work, with the exception of fast-paced, assembly line work, and was limited to working for two-hour intervals. *Fitzpatrick*, 2016 WL 1258477, at *8. In sum, the ALJ improperly made an RFC finding after declining to rely on the one medical opinion that addressed the effects of Garcia's mental impairments on his ability to work. *Id.* Indeed, as noted above, the ALJ himself reported that he was unable to obtain additional assessments that would have shone light on Garcia's ability to work. Doc. 8-22 at 26; Doc. 8-22 at 35.

That notwithstanding, reversal and remand is only warranted if Plaintiff can show prejudice as a result of the ALJ's error. *Ripley*, 67 F.3d at 557 (citation omitted). Stated differently, remand is required only where there is a "realistic possibility" that the ALJ would have reached a different conclusion absent the error. *January v. Astrue*, 400 F. App'x 929, 933

9

(5th Cir. 2010) (per curiam); *Raper*, 262 F.Supp.3d at 422. That burden is satisfied here. Had the ALJ requested a medical source statement or been able to have Garcia undergo a work evaluation, vocational assessment, or consultative evaluation to assess the effects of Garcia's mental limitations on his ability to work, there is the possibility that, depending on the results, the ALJ would have placed greater restrictions on Garcia's mental RFC. *Thornhill v. Colvin*, No. 14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Dec. 15, 2014) (Horan, J.) (finding prejudice "where the ALJ could have obtained evidence that might have changed the result – specifically, a medical source statement"), *adopted by* 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (Lynn, J.). Accordingly, this case must be reversed and remanded.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 15, is **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 19, is **DENIED**, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings.

**SO ORDERED** on March 1, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE